**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| MAURICE JACKSON, R31861, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 25-cv-01919-SMY |
| | ) | |
| GOOD SAMARITAN HOSPITAL, | ) | |
| WARDEN CROW, | ) | |
| JOHN/JANE DOE 1, | ) | |
| JOHN/JANE DOE 2, | ) | |
| and BLAKE A. BRUTON | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

**YANDLE, Chief District Judge:**

This matter is before the Court for preliminary review of Plaintiff Maurice Jackson's First Amended Complaint (Doc. 17), filed pursuant to 42 U.S.C. § 1983 for constitutional deprivations stemming from the alleged denial of medical care for a blood clot, abnormal heartbeat, and stroke by prison officials at Big Muddy River Correctional Center and medical providers at Good Samaritan Hospital.  He seeks monetary, declaratory, and injunctive relief.[1]  The First Amended Complaint is subject to review under 28 U.S.C. § 1915A, which requires this Court to screen and dismiss any portion that is legally frivolous or malicious, fails to state a claim for relief, or seeks money damages from an immune defendant.  *Id*.

**First Amended Complaint**

Plaintiff makes the following allegations in the Amended Complaint (Doc. 17, pp. 1-9):

Plaintiff complained of chest pain to staff at Big Muddy River Correctional Center (BMRCC) in

---

[1] Because Plaintiff does not seek urgent relief, the Court construes his request for injunctive relief as a request for permanent injunctive relief *at the close of the case*. If more immediate relief is sought, Plaintiff may file a Motion for Temporary Restraining Order and/or Preliminary Injunction under FED. R. CIV. P. 65.

January 2024.  He was referred to Good Samaritan Hospital for further evaluation and treatment the following month.  *Id*. at 4.

Dr. Blake Bruton evaluated Plaintiff at the hospital for six hours on February 9, 2024. In the process, hospital staff drew eighteen vials of blood for testing.  Plaintiff had an abnormal EKG, ECG, and D-dimer blood test.  He also had a non-calcified micronodule (1.5 mm) and probable granuloma in his right mid-lung field.  Plaintiff was diagnosed with "unspecified" chest pain, elevated troponin, and RSV bronchitis.  *Id*. at 4-5.  Although Dr. Bruton was aware of Plaintiff's granuloma, abnormal heartbeat, and chest pain, the doctor only offered him Tylenol (325 mg).  *Id*. at 3.  Dr. Bruton explained that no additional treatment would be provided unless his symptoms worsened.  *Id*. at 4.

After returning to BMRCC, Plaintiff was isolated for eight days.  *Id*. at 5.  During this time, he suffered from increasingly severe chest pain and sleep apnea.  Sometime in February, Nurse Practitioner Stacy Menees recommended another blood test.  The test confirmed the presence of a blood clot.  Plaintiff was sent back to the hospital to see Dr. Bruton.  *Id*.

During his second hospital visit in February 2024, Dr. Bruton ran more tests.  Plaintiff was diagnosed with a blood clot in his chest (lungs), but the doctor again said he would do nothing about it unless Plaintiff's condition worsened.  Plaintiff asked, "If it worsens, won't I be dead?" *Id*. at 5.  Dr. Bruton responded, "Well, I hope not."  *Id*.  Plaintiff asked the doctor if any pills were available to treat the condition.  Dr. Bruton admitted that medication was available, but again said that no additional treatment would be provided unless Plaintiff's symptoms worsened.  *Id*.

Plaintiff suffered a stroke while lifting weights in the prison yard on March 18, 2024. Sergeant Seiverking called a "Code 3" after Plaintiff reported rapid breathing and numbness. Plaintiff was unable to speak by the time he arrived in the prison's health care unit (HCU).

2

Nurse Lori, Nurse Tate, and Nurse Jennifer evaluated him while C/O Baker, Sergeant Crown, and Lieutenant Wilson observed. *Id*. at 6. As the nurses ran an EKG, Plaintiff lost his vision and then lost consciousness. Plaintiff was again sent to the hospital where he underwent surgery. He returned to prison the same evening. Plaintiff recovered in segregation for two days and then moved to the general inmate population after testing negative for drugs. *Id*.

Plaintiff attempted to address his complaints in a series of emergency grievances submitted on or around February 5, 2024, February 20, 2024, February 23, 2024, April 24, 2024, August 14, 2024, January 17, 2025, March 18, 2025, and April 28, 2025. *Id*. at 7. Warden Crow forwarded the grievances to Grievance Supervisor John/Jane Doe and Director of Nursing (D.O.N.) John/Jane Doe for expedited processing. *Id*. at 7-8. Plaintiff received no response. Plaintiff blames the grievance officials for conspiring to ignore his grievances and prevent his complaints from being heard in court. *Id*.

Based on the allegations, the Court designates the following claims in the *pro se* First Amended Complaint:

Count 1: Eighth Amendment claim against Defendants for responding with deliberate indifference to Plaintiff's chest pain, abnormal heartbeat, blood clot, and stroke beginning in January 2024.

Count 2: First and/or Fourteenth Amendment claim against Defendants for conspiring to disregard grievances in order to deny him access to the courts.

Any other claim mentioned but not addressed herein is considered dismissed without prejudice as inadequately pled under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## Discussion

### Preliminary Dismissals

Plaintiff mentions the following individuals in the statement of his claim but does not identify them as defendants: BMRCC staff, Stacy Menees, Nurse Lori, Nurse Tate, Nurse Jennifer,

3

C/O Baker, Sergeant Seiverking, Sergeant Crown, and Lieutenant Wilson. Therefore, the Court will not treat these individuals as defendants; all claims against them are considered dismissed without prejudice. *See* FED. R. CIV. P. 10(a) (title of the complaint "must name all the parties").

Plaintiff identifies Good Samaritan Hospital as a defendant but makes no allegations of wrongdoing against it. He does not describe a policy or custom of the hospital that caused a violation of his rights. At most, he attempts to proceed on a theory of *respondeat superior* liability, which is not recognized under § 1983. *See Monell v. Dept. of Soc. Servs.*, 436 U.S. 658 (1978) (*respondeat superior* provides no basis for holding municipalities liable under § 1983 but local government could be held liable if government's own policy or custom caused the deprivation); *Shields v. Illinois Dept. of Corrections*, 746 F.3d 782 (7th Cir. 2014) (extending *Monell* standard to private corporations). Because Plaintiff fails to state a colorable claim against Good Samaritan Hospital, it will be dismissed from the case without prejudice.

### Count 1

An Eighth Amendment claim of inadequate medical care arises when a state actor-defendant responds to a prisoner-plaintiff's objectively serious medical need with deliberate indifference. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). An objectively serious medical need is one that has been diagnosed by a physician as requiring treatment or one where the need for treatment would be obvious to a lay person. *Id.*; *King v. Kramer*, 680 F.3d 1013, 1018 (7th Cir. 2012). Deliberate indifference occurs when a defendant knows that the risk of injury or harm is substantial but still fails to take reasonable measures to prevent it. *Chapman v. Keltner*, 241 F.3d 842, 845 (7th Cir. 2001).

Plaintiff describes an objectively serious medical need. According to the allegations, Plaintiff was diagnosed with a blood clot in his lungs that resulted in a stroke when it was left

4

untreated. The allegations also describe deliberate indifference by Dr. Bruton for repeatedly refusing to treat Plaintiff's blood clot until he suffered a stroke. Because Plaintiff alleges that this doctor acted under color of state law pursuant to a contract with the State of Illinois at the time, Count 1 survives screening against Dr. Bruton.

Plaintiff also alleges that prison grievance officials were made aware of his medical needs through emergency grievances he sent the warden, grievance supervisor, and D.O.N. He also alleges that the emergency grievances were expedited for processing but ultimately ignored; Warden Crow, Grievance Supervisor Doe, and D.O.N. Doe never responded to them.

An inmate's correspondence to prison administrators may establish a basis for personal liability under § 1983 where it provides knowledge of a constitutional deprivation. *Perez v. Fenoglio*, 792 F.3d 768, 782 (7th Cir. 2015) (citing *Vance v. Peters*, 97 F.3d 987, 992-93 (7th Cir. 1996)). Once an official is "alerted to an excessive risk to inmate safety or health through a prisoner's correspondence, 'refusal or declination to exercise the authority of his or her office may reflect deliberate disregard.'" *Id.* Because Plaintiff alleges that Warden Crow, Grievance Supervisor John/Jane Doe, and D.O.N. John/Jane Doe obtained actual knowledge of his objectively serious medical condition and inadequate medical care through emergency grievances he submitted while actively seeking treatment, his claims against these grievance officials may proceed.

**Count 2**

Grievance procedures are "not mandated by the First Amendment and do not by their very existence create interests protected by the Due Process Clause" of the Fourteenth Amendment. *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). Because the Constitution requires no procedure at all, the failure of state prison officials to follow their own grievance procedures does not violate the Constitution. *Maust v. Headley*, 959 F.2d 644, 648 (7th Cir. 1992); *Shango v.*

*Jurich*, 681 F.2d 1091, 1100-01 (7th Cir. 1982).  Therefore, Plaintiff fails to state a viable claim in Count 2.

### Identification of Unknown Defendants

Plaintiff will be allowed to proceed with Count 1 against Grievance Supervisor John/Jane Doe and D.O.N. John/Jane Doe, once identified.  The defendants must be identified with particularity before service of the First Amended Complaint can be made on them.  Plaintiff will have an opportunity to engage in limited discovery to ascertain the identity of these defendants. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir. 2009).  The Current Warden of Big Muddy River Correctional Center will be added as a defendant, in an official capacity only, to help identify these unknown individuals by name.  Once their names are discovered, Plaintiff must file a motion to substitute each newly identified defendant in place of the generic designations in the case caption and throughout the First Amended Complaint.

### Disposition

The First Amended Complaint (Doc. 17) survives screening under 28 U.S.C. § 1915A. **COUNT 1** will proceed against **DR. BLAKE A. BRUTON, WARDEN CROW, GRIEVANCE SUPERVISOR JOHN/JANE DOE,** and **DIRECTOR OF NURSING JOHN/JANE DOE**, in their individual capacities.  The **CURRENT WARDEN OF BIG MUDDY RIVER CORRECTIONAL CENTER** is **ADDED** as an official capacity defendant for the purpose of responding to discovery aimed at identifying the unknown defendants by name.

**COUNT 1** is **DISMISSED** without prejudice against all other defendants for failure to state a claim.  **COUNT 2** is **DISMISSED** with prejudice against **ALL DEFENDANTS** for failure to state a claim.  **GOOD SAMARITAN HOSPITAL** is **DISMISSED** without prejudice as well.

The Clerk of Court shall prepare for the **CURRENT WARDEN OF BIG MUDDY**

6

**RIVER CORRECTIONAL CENTER (official capacity), DR. BLAKE A. BRUTON, WARDEN CROW,** and, once identified, **GRIEVANCE SUPERVISOR JOHN/JANE DOE,** and **DIRECTOR OF NURSING JOHN/JANE DOE**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the First Amended Complaint (Doc. 17), and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require the Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address.  This information shall be used only for sending the forms as directed above or for formally effecting service.  Any documentation of the address shall be retained only by the Clerk and shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the First Amended Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to SDIL-Local Rule 8.2, Defendants need only respond to the issues stated in this Merit Review Order**.

Plaintiff is **ADVISED** that if judgment is rendered against him and the judgment includes the payment of costs under 28 U.S.C. §1915, he will be required to pay the full amount of the costs, even though he was granted *in forma pauperis* status. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is further **ADVISED** that he is under a continuing obligation to keep the Clerk of

Court and the opposing parties informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**The Clerk's Office is DIRECTED to ADD the CURRENT WARDEN OF BIG MUDDY RIVER CORRECTOINAL CENTER (official capacity only) as a defendant; TERMINATE GOOD SAMARITAN HOSPITAL as a defendant; and ENTER the standard qualified protective order under Health Insurance Portability and Accountability Act.**

**IT IS SO ORDERED.**

**DATED:   July 20, 2026**

**STACI M. YANDLE**
**Chief U.S. District Judge**

8

**<u>Notice to Plaintiff</u>**

Once identified, the Court will take the necessary steps to notify the Defendants of your lawsuit and serve them with a copy of your First Amended Complaint. After service has been achieved, Defendants will enter an appearance and file an Answer to your First Amended Complaint. It will likely take at least **60 days** *from the date they are served with this lawsuit* to receive the Defendants' Answers, but it is entirely possible that it will take **90 days** or more. When Defendants have filed their Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for Defendants before filing any motions, to give the Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.